IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Walker Camp, | C/A No.: 1:09-2892-HFF-SVH |
| Plaintiff, | |
| vs. | |
| | REPORT AND RECOMMENDATION |
| Cedric June, Sharon Patterson, Anthony Padula, and Dennis Part, | |
| Defendants. | |

Plaintiff, who is proceeding *pro se* in this action, is an inmate at Lee Correctional Institutional ("LCI"). Plaintiff has asserted claims under 28 U.S.C. § 1983, alleging various violations of his constitutional rights. Before the court are the following motions: (1) Defendants' Motion for Summary Judgment [Entry #17], and (2) Plaintiff's Motion for Summary Judgment [Entry #30]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I. Factual and Procedural Background

Plaintiff filed his complaint in this action on November 6, 2009 [Entry #1]. Defendants' motion for summary judgment was filed on February 17, 2010, and pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion [Entry #18]. Plaintiff timely filed a response in

opposition to Defendant's motion [Entry #20]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

In his complaint, Plaintiff alleges that Defendants violated the Eight Amendment by using excessive force and violated his Fourteenth Amendment due process rights with regard to a disciplinary hearing. Specifically, Plaintiff alleges that a fellow inmate named David Rowe took two trays of food while at the cafeteria on February 5, 2009. (Compl. ¶ 1). A few moments later, Defendant June took one of Rowe's trays, at which time Rowe "started after" Defendant June. (*Id.* at ¶ 2). According to Plaintiff, while Plaintiff was pulling Rowe back, Defendant June threw the trays down and sprayed both Plaintiff and Rowe with chemical munition spray (*Id.* at ¶ 4). According to Defendant June, Plaintiff approached Defendant June and Rowe and stated, "Let's go because if you do something to him, we will do something to you." *See* June Aff. [Entry #17-3]. Defendant June contends this statement was made in a loud and disrespectful manner and that Plaintiff and Rowe were disregarding directives and causing a disturbance in the prison. (*Id.*)

Plaintiff alleges he was taken to medical where he was allowed to rinse the spray off, but claims it still burned throughout the day. (*Id.* at ¶ 5). On the same day, Plaintiff was taken to the Special Management Unit ("SMU") and told he would be charged with an infraction. (*Id.* at ¶ 7). Plaintiff was eventually charged with threatening to inflict harm on an employee. He alleges he was given a hearing, but was not allowed to call witnesses

he believes had relevant information (*Id.* at ¶¶ 10–11). Thereafter, Plaintiff was convicted of the charge and sanctioned to 360 days of disciplinary detention.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at

trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322–323.

III. Analysis

    A. *Respondeat Superior*

Defendant Dennis Patterson (incorrectly named Dennis Part) contends Plaintiff failed to make any allegations against him and that he cannot be held liable on a theory of *respondeat superior* or vicarious liability. The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, *Reed v. Slakan*, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Dennis Patterson was personally responsible for any of the incidents or acted in any way other than a supervisory role. Further, Plaintiff has not shown that Dennis Patterson was deliberately indifferent to, or tacitly authorized, any of the actions or inactions of SCDC employees. Thus, Plaintiff fails to show that Dennis Patterson is liable on a theory of *respondeat superior* or supervisory liability, and the claims against him must be dismissed.

B. Excessive Force

Plaintiff claims Defendant June's use of the chemical spray constitutes excessive force in violation of the Eight Amendment. It is well-established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 5 (1992).

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm' ... 'contemporary standards of decency are always violated ... whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical

punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 130 S.Ct. at 1179 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of ... breaches of prison discipline." *Id.* at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of mace in a prison setting. In *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir. 1984), the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution. Specifically, the *Bailey* court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner. *Id.* at 969-70. The *Bailey* Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat. *Id.*

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

After applying the *Whitley* factors to the facts at hand, the court finds Plaintiff has not established a claim for excessive force. First, Defendant June feared for his safety and the security of LCI. *See* June Aff. ¶ 5. Plaintiff has not established that the use of chemical spray was excessive in light of Defendant June's statement that Plaintiff and Rowe were disregarding directives. *Id.* at ¶ 4. The actual injury inflicted appears to be *de minimis* from the evidence provided. The medical summary for the Plaintiff on the date of his alleged injury, February 5, 2009, states:

> I/m escorted to medical by Sgt. Durant for PUOF Check (chemical munitions and handcuffs). I/m c/o SOB, burning and cuffs being too tight. Cuffs removed per security no bruising or abrasions noted from cuffs. O2 Sat 99% RA. I/m allowed to rinse face with cool water X approx 10 minutes. No Resp Distress noted. I/m able to converse with nurse and security w/o difficulty. I/m escorted from medical in NAD, per Sgt. Durant.

*See* SCDC Health Services: Medical Summary for Inmate Walker Camp [Entry #17-2]. Plaintiff does not allege that he has suffered any injury enduring beyond the date of the incident.

According to Defendant June, Plaintiff and Rowe were causing a disturbance in the prison and he perceived a threat to his personal safety and to the security of the institution. June Aff. ¶¶ 4-5. Furthermore, Plaintiff does not allege Defendant June used further force after the spray and Plaintiff admits he was taken to medical to wash off the spray immediately after the incident. Therefore, after balancing the *Whitley* factors, the court finds Plaintiff has not established that Defendants acted maliciously or sadistically. Thus, Plaintiff has failed to state a claim of excessive force against the Defendants and this claim should be dismissed.

    C.    Disciplinary Charge

Plaintiff also alleges he was denied due process under the Fourteenth Amendment during a disciplinary hearing for a charge of threatening to inflict harm on an employee. Specifically, he claims that Disciplinary Hearing Officer Sharon Patterson did not allow him to call a witness. Plaintiff was ultimately found guilty of the charge and was sanctioned with 360 days of disciplinary detention.

In order to recover damages for an allegedly unconstitutional conviction, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must ordinarily prove that the conviction or sentence at issue has been reversed on direct appeal, expunged by executive order, declared invalid by a

state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486–487 (1994). Although *Heck* involved a conviction in a court of law, the holding in *Heck* is equally applicable to cases which implicate the validity of an internal prison disciplinary conviction and sanction. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying *Heck* to claim challenging a disciplinary proceeding); *see also Stone-Bey v. Barnes*, 120 F.3d 718, 721 (7th Cir. 1997) ("The 'conviction' in the prison disciplinary sense is the finding of guilt on the disciplinary charge, and if success on the plaintiff's Section 1983 claim necessarily would imply the invalidity of that finding, then *Heck* bars the claim until such time as its requirements are satisfied").

While no evidence has been presented to the court showing that Plaintiff's disciplinary conviction has been overturned, Plaintiff does not allege that he was docked any good time credits as a result of this conviction, nor is there any other indication that this disciplinary conviction affects the length of Plaintiff's overall sentence, Defendants do not raise *Heck* as a possible defense to this claim. Therefore, for purposes of summary judgment, the undersigned has not considered *Heck* as a bar to Plaintiff's claim arising out of his disciplinary hearing and conviction. *Cf. Roller v. Cavanaugh*, 984 F.2d 120, 122 (4th Cir. 1993); *Strader v. Troy*, 571 F.2d 1263 (4th Cir. 1978) (where an inmate challenges the application to him of certain rules or procedures, but does not argue that he is entitled to immediate release or a speedier release, he may assert such a claim in federal court under 42 U.S.C. § 1983); *Pierce v. Freeman*, No. 95-7031, 1997 WL 467533 (4th

Cir. 1997) (holding that a prisoner cannot proceed on a § 1983 claim challenging the validity of a disciplinary proceeding resulting in the deprivation of good-time credits).

Even if not otherwise barred by *Heck*, Plaintiff's claim relating to his disciplinary charges, hearing and conviction are still subject to dismissal. First, the court notes that while Plaintiff is entitled to a hearing and/or other procedural safeguards for protected interests, such as the loss of good time credits, he is not actually entitled to a due process hearing every time action is taken to control his behavior. *See generally*, *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Sandin v. Connor*, 515 U.S. 472, 478 (1995) (the "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner").

Plaintiff does not allege any loss of good-time credits. Rather, Plaintiff alleges the hearing was unconstitutional because he was not allowed to present a witness he alleged possessed relevant information. This allegation does not present a genuine issue of fact as to whether Plaintiff was denied any constitutional right.

Plaintiff has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification. *See Slezak v. Evatt*, 21 F.3d 590 (4th Cir. 1994) (the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed); *Neal v. Shimoda*, 131 F.3d 818, 828 (9th Cir. 1997) ("[A] prisoner does not have a constitutional right to be housed at a particular institution, ..., [or] to

receive a particular security classification...."); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) ("[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."); *Ordaz v. Lynaugh*, No. 93-4290, 1994 WL 144882, *2 (5th Cir. 1994) ("*Wolff* ... does not determine the procedural requirements for disciplinary action such as restriction of commissary privileges."); *Bazzetta v. McGinnis*, 430 F.3d 795, 802-05 (6th Cir. 2005) (regulation banning virtually all visitation for inmates found guilty of two or more violations of major misconduct was not a dramatic departure of a typical and significant hardship in relation to ordinary incidents of prison life necessary to implicate a state-created liberty interest, and thus did not rise to level of egregious conduct necessary to violate the guarantees of Fourteenth Amendment's procedural due process clause); *Tarney v. Boles*, 400 F.Supp.2d 1027, 1040 (E.D. Mich. 2005) (inmate's loss or restriction of telephone privileges for disciplinary reasons is not considered an atypical significant hardship, even when the disciplinary charges are allegedly false, and therefore does not implicate a liberty interest protected by due process); *Papadakis v. Director*, No. 08-670, 2010 WL 1753358 at *2 (E.D. Tex. Apr. 8, 2010) ("[B]eing placed in disciplinary confinement, losing commissary and property privileges for thirty days, and remaining at the same time earning class are not sanctions which impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. 472).

Therefore, in order to state a § 1983 claim for the action alleged, Plaintiff would have to present evidence sufficient to show that Defendants' decision in his case was arbitrary, capricious, or based on some other unlawful motive. *See generally*, *Sandin*, 515 U.S. at 486; *Crowe v. Leeke*, 273 S.C. 763, 259 S.E.2d 614, 615 (1979). Plaintiff has presented no such evidence. Thus, Defendants are entitled to summary judgment.

D.      Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526

U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional

rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

IV. Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #17] be granted, Plaintiff's motion for summary judgment [Entry #30] be denied, and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

July 19, 2010  Shiva V. Hodges
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**